UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MNG SHU JIN,

         Plaintiff,    **MEMORANDUM AND ORDER**

PACIFIC BUFFET HOUSE, INC., and EUN
SOOK AHN,           06-CV-579 (VVP)

         Defendants.
--------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

  The plaintiff, Ming Shu Jin, brought this action in February 2006, asserting violations of the

Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and related violations of the New

York Labor Law (the "NYLL"), § 191 *et seq.*  In August 2007, all parties consented to trying the

case before me and having me decide all dispositive motions.  *See* 28 U.S.C. § 636.  The case

culminated in a six-day bench in December 2007.  On the basis of my subsequent findings of fact

and conclusions of law (*See* Docket No. 52), in which I awarded $19,078.10 exclusive of interest,

the plaintiff has moved for attorneys' fees and costs.  The defendants were given an opportunity to

challenge the requested amount, but did not make any submissions or otherwise contest the amount

of fees and costs sought by the plaintiff.  For the reasons below, Jin is entitled to receive $60,560

in attorneys' fees and $16,713.00 in costs.

**I.**  **DISCUSSION**

    **A.**  **The Presumptively Reasonable Fee**

  Establishing the amount of reasonable attorneys' fees has been the subject of extended

discussion in the Second Circuit in recent years.  *See generally Bliven v. Hunt*, 579 F.3d 204, 213

(2d Cir. 2009); *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009); *Barfield*

*v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *superseding* 493 F.3d 110 (2d Cir. 2007).  Reasonable attorneys' fees used to be calculated by what was known as the "lodestar" method, which entailed determining the "number of hours reasonably expended on the litigation [and] multipl[ying that figure] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Whitney v. Jet Blue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *2 (E.D.N.Y. Dec.21, 2009) (providing background and history).  Courts would then adjust the lodestar figure by a multiplicative figure, if need be, to reflect the specific considerations of a particular case.  *See Arbor Hill*, 522 F.2d at 186, 190.  The reasonableness of hourly rates was guided by the market rate "[p]revailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley*, 461 U.S. at 433, while the relevant community was generally the "district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

More recently, however, the Second Circuit signaled a departure from the "lodestar" language, in favor of a modified approach that focuses on calculating a "presumptively reasonable fee."  *See Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 172; *Barfield*, 537 F.3d at 151.  Notwithstanding the abandonment of the "lodestar" approach, the presumptively reasonable fee is still determined by reference to the number of hours reasonably expended on a matter and the reasonable fee to be charged for those hours.  *See generally Bliven*, 579 F.3d at 213.  Under this approach, the court considers a multitude of case-specific factors[1] in order to establish a reasonable

[1] These factors include, but are not limited to, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," – *Arbor Hill*, 522 F.2d at 184, 187-90 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The *Johnson* factors include (1) the time and labor required; (2) the novelty

hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate

by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 184, 190.  The product

is known as the presumptively reasonable fee.  *See id.*  Thus, district courts must now "bear in mind

*all* of the case-specific variables that [the Second Circuit] and other courts have identified as

relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522

F.3d at 190. (emphasis in original).  This determination is undertaken consistent with the principle

that a "reasonable paying client wishes to spend the minimum necessary to litigate the case

effectively."  *Id.* at 190.

The Second Circuit recently clarified the contours of its approach to attorneys' fees and the

presumptively reasonable fee. *See McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010).

The Circuit reiterated that the presumptively reasonable fee represents an approximation of "what

a competitive market would bear."  *Id.* at 420. Whereas the traditional lodestar approach had

multiplied the hourly rate by the number of hours worked and *then* used the *Johnson* factors to

reflect case-specific considerations, the *Arbor Hill* approach essentially front-loads the *Johnson*

factors.[2]   *See McDaniel*, 595 F.3d at 420 (citing *Arbor Hill* and assessing case-specific

---

and difficulty of the questions involved; (3) the skill required to properly perform the relevant services;
(4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary
fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the
circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and
ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional
relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19.

[2] The Supreme Court has recently expressed skepticism with the propriety of the *Johnson*
approach, arguing that it gives too little guidance to judges by placing the emphasis on factors and
considerations that are overly subjective.  *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672
(2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563
(1986)).  Instead, it found that the lodestar approach provided better limits on a judge's discretion by
making the determination more objective, providing for fee awards that are more predictable and less
disparate. *See Kenny A.*, 130 S. Ct. at 1672.  However, the *Johnson factors*, as opposed to the *Johnson
method*, are still relevant in informing the court's determination of a reasonable fee and a reasonable

considerations at the "outset, [and] factoring them into [the court's] determination of a reasonable hourly rate for the attorneys' work."); *see also Saunders v. City of New York*, No. 07-CV-830, 2009 WL 4729948, at *6 (S.D.N.Y. Dec. 9, 2009) (contrasting the lodestar and *Arbor Hill* methods and describing how the latter considers *Johnson* factors "earlier in the fee calculation process"). The court in *McDaniel* observed that

> [f]rom a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers those same factors in calculating a multiplier to the lodestar. The benefit of *Arbor Hill's* [sic] methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained.

595 F.3d at 422 (citing *Arbor Hill*, 522 F.3d at 192); *see also Saunders*, 2009 WL 4729948, at *6.

In April, the Supreme Court issued a seemingly strong endorsement of the more traditional lodestar approach and lodestar language. *See Kenny A.*, 130 S. Ct. at 1672-74. The extent to which the Court's use of the lodestar in that case implicitly calls into question the Second Circuit's endorsement of a presumptively reasonable fee and rejection of both the lodestar approach and lodestar language, is less than clear. The Court recognized, however, that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 1672 (emphasis in original). That too is the primary focus of the *Arbor Hill* line of cases. The court also noted that relevant, case-specific factors such as the novelty or

---

hourly rate. *See McDaniel*, 595 F.3d at 422. *Kenny A.* cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee. Indeed, the Court's fears of unrestrained discretion in applying a pure *Johnson* approach are largely absent from the more cabined methods of calculating a presumptively reasonable fee in this Circuit.

complexity of the case are already "subsumed" or "included" in the lodestar figure when determining a reasonable fee. *See Kenny A.*, 130 S. Ct. at 1673 (citing authorities). Therefore, whether the calculation is referred to as the lodestar or as the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended.

### 1.    Reasonable Hourly Rate

The plaintiffs in this case are represented both by a non-profit organization providing legal services, YKASEC - Empowering the Korean American Community (now known as the MinKwon Center for Community Action), and *pro bono* by the large international law firm Skadden, Arps, Slate, Meagher and Flom. *See* Affirmation of Steven Choi in Support of Plaintiff's Application for an Award of Attorneys' Fees and Costs, dated October 26, 2009 ("Choi Aff."), ¶ 7. The plaintiff seeks recovery for three attorneys who performed work on the matter, one at YKASEC, and two at Skadden. According to Choi's affirmation, he has extensive experience litigating wage and hour cases in federal court, and his regular hourly rate at YKASEC is $225. The hourly rates for Jinny Ahn, a Skadden staff attorney who incurred many hours on this case, are between $240 and $270 for the periods in question. For Beverly Farrell, another Skadden attorney, the normal hourly rates charged are between $520 and $590.[3] However, "in the interest of reasonableness and discretion," the plaintiff only seeks hourly rates of $225 for Choi, $100 for Ahn, and $150 for Farrell. Choi Aff. ¶¶15, 18. The court appreciates that exercise of discretion, and agrees that those rates are more than

---

[3] While two legal assistants also performed work on this case, the plaintiff has elected to waive those fees. *See* Choi Aff. ¶ 20. The plaintiff did not provide information as to the background or experience of the two Skadden attorneys, though in light of significant reductions that the plaintiff proposes, the inclusion of such information was not as necessary as in other cases.

reasonable, and well in line with prevailing market rates in this district given the nature of the case. *See Cho v. Koam Med. Servs.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007).

As previously mentioned, the court establishes a reasonable hourly rate by looking to the prevailing market rates for comparable services in the district in which the case is filed. *See Blum*, 465 U.S. at 896 n.11; *Polk*, 722 F.2d at 25. *Whitney* invaluably collected recent cases on reasonable hourly rates for partners and associates in the Eastern District of New York. *See Whitney*, 2009 WL 4929274, at *7 (listing cases and approving an hourly rate of $350 for experienced attorney seeking a $450 hourly rate). As the court observed, the "rates applied in this district have ranged widely depending on the nature of the firm, the experience of the lawyer and the type of case." *Whitney*, 2009 WL 4929274, at *7. As *Whitney* was decided recently and sets forth a good catalogue on rates, it is worth surveying the cases it cited. *See Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2-3 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates between $300 and $400 for partners, $200 and $300 for senior associates, and $100 and $200 for junior associates); *Melnick v. Press*, No. 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (noting market rates of between $200 and $375 for partners and between $100 and $295 for associates); *Moran v. Sasso*, No. 05-CV-4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200 to $250 for senior associates); *Duverger v. C & C Duplicators, Inc.*, No. 08-CV-0721, 2009 WL 18132229, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for partners, and $200 and $250 for senior associates); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (providing market rates between $200 and $375 for partners, $200 to $250 for senior associates,

$100 to $150 for junior associates); *Baruch v. Healthcare Receivable Mgmt, Inc.*, No. 05-CV-5393, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting hourly rates of $200 to $375 for partners); *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (noting partner rates between $200 and $375 per hour).

The hourly rates requested here are well within the ranges provided by these cases. Adopting the proposed hourly rates is thus consistent with the market-based approach called for by *Arbor Hill* and its fledgling progeny. Case-specific considerations do not support any further reduction in the hourly rates requested by the plaintiff. Accordingly, the court will calculate a reasonable fee on the basis of hourly rates of $225, $150, and $100 for Choi, Farrell, and Ahn respectively.

### 2.   Reasonable Number of Hours Worked

Even after *Arbor Hill* modified the lodestar approach, determining reasonable attorneys' fees still requires a review of reasonably detailed contemporaneous time records, as contemplated by *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Courts are given broad discretion to evaluate the reasonableness of the number of hours expended. *See Anderson v. Sotheby's, Inc.*, No. 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006); *see also Hensley*, 461 U.S. at 434; *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003). In considering what is reasonable, courts "should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Courts should consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A court has broad discretion to "trim the fat" in an application for attorneys'

fees, and to eliminate excessive or duplicative hours. *See, e.g.*, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1988); *Carey*, 711 F.2d at 1146-47.

The plaintiff has submitted adequate billing records indicating that the three attorneys together expended 435.25 hours on this case, while they request recovery for 379.5 hours.[4] To be sure, this is a not insignificant amount of time. However, it seems reasonable given the nature and history of this case. Several observations are warranted. First, the case proceeded all the way through a six-day trial and post-trial briefing. In that regard, it was hardly a routine default, as frequently happens in FLSA cases. Secondly, it is apparent from a review of the time sheets submitted that both Choi and Ahn billed in small increments during the early stages of this case, and only accrued major stretches of time (hours wise) at depositions and preparing for and conducting the trial, which reflects keen billing judgment. *See* Motion for Attorneys' Fees, Ex. A. Thirdly, as Choi notes, interpreters were required at depositions and at the trial, which extended the amount of time for those proceedings. *See* Choi Aff. ¶ 10. Lastly, the vexatious posture adopted by the defendant, *pro se*, both during discovery and afterwards, was a significant factor in causing the plaintiff's attorneys to expend somewhat more time in prosecuting their client's case than would normally be necessary. *See* Choi Aff. ¶¶ 11-12. For all of these reasons, and given the court's familiarity with this particular case and experience with other comparable cases, it is reasonable to have spent 379.5 hours in reaching the successful result that the plaintiff obtained. *See Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing cases); *Cho v. Koam Med. Servs.*, 524 F. Supp. 2d 202, 209-10 (E.D.N.Y. 2007) (awarding attorneys' fees for 757 hours after FLSA bench trial).

---

[4] Since Farrell's total hours only amounted to 12, Ahn and Choi together account for over 97% of the hours expended on this case. In total, Choi billed 220.9 hours on this case, but only requests recovery for 176.4, while Ahn billed 202.35 hours, but only requests recovery for 191.9. *See* Choi Aff. ¶¶ 14-15.

Accordingly, the plaintiff is entitled to $60,560 in attorneys' fees.[5]  That figure includes

$39,690 for Choi (176.4 hours x $225/hr.), $1,680 for Farrell (11.2 hours x $150/hr), and $19,190

for Ahn (191.9 hours x$100/hr).  It is based on reasonable hourly rates given the nature of this case,

as well as a reasonable number of hours expended.  The court notes that this award roughly triples

the relatively modest damages (before interest was calculated) in this case.  To some extent, this

situation highlights a difficulty of applying marketplace considerations, as *Arbor Hill* envisions, in

determining fee awards.  Presumably, a reasonable paying client would not incur attorneys' fees

substantially in excess of the potential recovery.  Of course, nothing before or since *Arbor Hill* limits

attorneys' fees to the damages amount, or even imposes a proportionality requirement.  *See County*

*of Riverside v. Rivera*, 477 U.S. 561, 576-78 (1986); *Kassim v. City of Schenectady*, 415 F.3d 246,

252 (2d Cir. 2005); *Quarantino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999); *Cowan v. Prudential*

*Ins. Co. of America*, 935 F.2d 522, 526 (2d Cir. 1991).  Thus, the FLSA's fee-shifting provision

helps ensure that the policy considerations advanced by that statute are not washed away by the

difficulties – particularly for those of modest means –  in procuring legal counsel and access to the

courts.  *See Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118, at *7 (S.D.N.Y.

May 8, 2007); *Grochowski v. Ajet Const. Corp*., No. 97-CV-6269, 2002 WL 465272, at *2

(S.D.N.Y. Mar. 27, 2002).  The court has examined the billing records in some detail and finds that

the individual entries are not excessive, and do not reflect time spent on unnecessary tasks.

Therefore, despite the large discrepancy between the damages and the fee award, it is appropriate.

---

[5] The plaintiff's request for fees is slightly higher, at $64,520.  However, the court has adopted in whole the hourly rates and number of hours proposed by the plaintiff's counsel.  Accordingly, it is not clear what accounts for the additional $3,960.

**B.      Costs**

Jin also requests $16,713.10 in costs.  That figure is comprised of $11,092.35 for court reporting and transcripts, $1,149.60 in copying or duplication expenses, and $5,620.75 in fees for the interpreters.  Invoices have been submitted that reflect the three categories of costs.  *See* Motion for Attorneys' Fees, Ex. D, E.  The court has examined these invoices, and finds that the requests are substantiated and reasonable.  Counsel has waived recovery of the balance of the costs incurred. *See* Choi Aff. ¶ 22.  Therefore, Jin is entitled to $16,713.10 in costs.

**CONCLUSION**

For the reasons stated above, Jin is awarded $60,560.00 in attorneys' fees and $16,713.14 in costs.  It is SO ORDERED.

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
       June 25, 2010